UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DARRIN MARTIN,

                Petitioner,

v.                                           Case No. 3:16-CV-535 JVB

SUPERINTENDENT,

                Respondent.

**OPINION AND ORDER**

      Darrin Martin, a pro se prisoner, filed a habeas corpus petition challenging the prison disciplinary hearing (ISP 16-03-361) where a disciplinary hearing officer (DHO) found him guilty of possession or use of a controlled substance in violation of Indiana Department of Correction (IDOC) policy B-202. (ECF 1 at 1.) As a result, he was sanctioned with the loss of 30 days earned credit time. (*Id.*) Respondent filed a response. (ECF 6.) Martin filed a motion for extension of time to file a traverse. (ECF 11.) This court granted Martin's motion, providing him with an additional 90 days in which to file a traverse. (ECF 14.) The extended deadline came and passed with no response from Martin. The court has waited several weeks beyond Martin's extended deadline, but he has not yet filed his traverse, nor sought additional time to do so. The court deems this matter fully briefed.

      Martin claims that he was denied due process because the DHO did not have sufficient evidence on which to find him guilty. (ECF 1 at 2.) The imposition of prison discipline will be upheld so long as there is some evidence to support the finding. *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record,

1

independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted). The court will overturn the hearing officer's decision only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n,* 13 F.3d 1073, 1077 (7th Cir. 1994).

The IDOC defines offense B-202 as "[p]ossession or use of any unauthorized substance controlled pursuant to the laws of the State of Indiana or the United States Code or possession of drug paraphernalia." Adult Disciplinary Process, Appendix I. http://www.in.gov/idoc/files/02-04-101_APPENDIX_I-OFFENSES_6-1-2015(1).pdf. The IDOC's definition of 'possession' includes any contraband on the prisoner's person, without reference to ownership: "offenders are presumed to be responsible for any property, prohibited property or contraband that is located on their person, within their cell or within areas of their housing, work, educational or vocational assignment that are under their control." Disciplinary Code for Adult Offenders. http://www.in.gov/idoc/files/02-04-101_The_Disciplinary_Code_for_Adult_Offenders___6-1-2015.pdf. Indiana State law prohibits possession of any synthetic drug. Ind. Code § 35-48-4-11.5.

The DHO had sufficient evidence on which to find Martin guilty of violating IDOC

2

policy. In fact, while there need only be "some evidence" of guilt, in this case there was abundant evidence supporting the DHO's finding. The Conduct Report states:

> [o]n 3/30/16 at approximately 11:30 am, I Sgt. McNeal was inside checkpoint 5, when I observed Offender Martin #252397 be handed something from Offender Fisher # 942432. I stepped out the checkpoint and asked both offenders to empty their pockets. Martin removed from his right pocket his ID card + 4 small white packages. The packages were concealed under his ID card. He immediately dropped the packages into the available trash bin and stated "those aren't mine." I confiscated the packages and brought both offenders to checkpoint 5 and patted them down. Both offenders were then escorted to custody hall for a full strip search. The packages were placed into IA locker #3 and photographed. The packages contained green leafy substance.

(ECF 1-1 at 1.) The confiscated substances subsequently tested positive for "synthetic cannabinoids." (ECF 6-3 at 3.) Martin requested that Officer Fox, the officer who conducted the strip search, be interviewed as a witness. (ECF 4-6 at 1.) Officer Fox stated that Sgt. McNeal told him about the contraband discovered and Officer Fox reported that there was no further contraband on Martin's person at the time of the strip search. (ECF 6-5 at 1.) The DHO reviewed the evidence from the witnesses, camera footage, photographs of the contraband, photographs of the drug test results, and the witness statement by Officer Fox. (ECF 6-9 at 1.) On the basis of this evidence, the DHO found Martin guilty of violating IDOC B-202. (*Id.*) This finding was not unreasonable or arbitrary in light of the eye-witness and physical evidence against Martin. The DHO had sufficient evidence on which to find Martin guilty of possession a controlled substance in violation of IDOC B-202.

Martin also argues that he was denied due process because the DHO was not impartial. (ECF 1 at 2.) According to Martin, prior to the start of the hearing, the DHO told Martin's lay advocate that "she was finding all offenders guilty at their hearings due to being upset at the stabbings of two (2) corrections officers just days before holding Offender Martin's hearing." *Id.* The Respondent contends, "[t]his unsubstantiated claim does not show bias." (ECF 6 at 6.) Respondent argues that there is no evidence demonstrating bias, such as the DHO's substantial

involvement in the underlying incident or investigation. (*Id.*)

A petitioner in a habeas corpus action must ordinarily provide competent evidence—such as first-hand evidence—of a due process violation. *Wilson-El v. Finnan*, 281 F. App'x 589, 591–92 (7th Cir. 2008) (holding that there was "no factual dispute [based on {petitioner's} actual personal knowledge] that if resolved in his favor would warrant relief" where inmate's claim of hearing board's wrong-doing was based on hearsay); *Johnson v. Finnan*, 467 F.3d 693, 694 (7th Cir. 2006) ("when a prisoner who seeks a writ of habeas corpus provides competent evidence [such as an affidavit by someone with personal knowledge of the events] contradicting an assertion by the prison disciplinary board on a material question of fact pertinent to an issue of constitutional law, the district court must hold an evidentiary hearing to determine where the truth lies"). However, the petitioner must go even further if he wishes to prevail on a claim that the hearing officer was dishonest or biased. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003).

Contrary to Martin's assertions, there is no competent evidence that the DHO was dishonest or partial. Rather, Martin's claim that the DHO was partial is based exclusively on an unsupported hearsay statement that the DHO allegedly made to his lay advocate, who relayed the comment to Martin. Martin has provided no support, such as an affidavit from his lay advocate, to prove that the DHO actually made this comment. Without some type of supporting evidence, this second-hand hearsay does not constitute competent evidence of the DHO's bias, nor meet the "high" burden of proof necessary to prove bias. *See Piggie*, 342 F.3d at 666; *Wilson-El*, 281 F. App'x at 591–92; *Johnson*, 467 F.3d at 694.

Martin next argues that IDOC violated its own policy by failing to "properly complete the chain of custody." (ECF 1 at 2.) However, the IDOC's failure to follow its own policy does

4

not rise to the level of a constitutional violation. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("state-law violations provide no basis for federal habeas relief"); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (finding that inmate's claim that prison failed to follow internal policies had "no bearing on his right to due process"). Moreover, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In prison disciplinary cases, due process does not require a complete chain of custody. Rather, "[a]bsent some affirmative indication that a mistake may have been made, [the] hypothetical possibility of tampering does not render evidence inadmissible, but goes instead to the weight of the evidence." *Webb v. Anderson*, 224 F.3d 649, 653 (7th Cir. 2000). Here, there is no affirmative indication—or even an allegation—that a mistake was made with respect to the evidence. Therefore, the lack of a chain of custody report does not serve as a basis for habeas corpus relief.

Martin's final argument is that he was denied equal protection of the law because he was punished more harshly than another inmate. The Equal Protection Clause prohibits the state from treating one group of similarly situated persons arbitrarily worse than another group, on the basis of membership in a protected class. *Morales v. Newkirk*, 85 F.3d 631 (7th Cir. 1996) (no equal protection claim where prisoner was disciplined more harshly than another because prisoner failed to allege that he was discriminated against because of his membership in a protected class); s*ee also Hill v. Davis*, 58 F. App'x 207, 209 (7th Cir. 2002) (unpublished) ("absent evidence that any disparity in punishment was based upon a suspect classification [like race or religion], punishing inmates differently for the same offense violates the Equal Protection clause only if there is no rational connection between the punishments and the offenses").

In this case, Martin has not identified any equal protection violation. Martin has not alleged that he was a member of a protected class, or that he was discriminated against because

5

of his membership in a protected class. Rather, Martin argues that it was unfair that he was disciplined more harshly than another inmate. However, discipline may comport with the requirements of procedural due process without being perfectly equitable. *See Herro v. City of Milwaukee,* 44 F.3d 550, 552 (7th Cir.1995) (holding that the fairness of discipline is not a basis for an equal protection claim).

For the reasons set forth above, the petition (ECF 1) is **DENIED**. The clerk is **DIRECTED** to close this case.

SO ORDERED on April 28, 2017.

    S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE